EOD JUN 2 1 2001

FILED-CLERK
U.S. DISTRICT COURT

01 JUN 20 PM 4: 20

TX EASTERN-BEAUMONT

BY _____



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| JEANNIE BEATTY, | § § § § | 1:00-CV803 (WCR) |
| v. | § § | |
| ISLE OF CAPRI CASINO, INC., et al.<br>Defendant. | § § § § | JURY |

## MEMORANDUM OPINION AND ORDER

Before the Court is St. Charles Gaming Company, Inc.'s ("SCGC") *Motion to Transfer Venue* [20-1] to the Western District of Louisiana, Lake Charles Division, or *Determine Applicable State Law* [20-2] should the transfer be denied. This case arises out of a "slip and fall" incident that occurred on the premises of SCGC d/b/a Isle of Capri Casino-Lake Charles in Lake Charles, Louisiana. Plaintiff alleges that Defendant was negligent in maintaining the premises, thereby resulting in her injuries. The case was removed from the 136th Judicial District Court, Jefferson County, Texas by SCGC on November 22, 2000.[1] This case has been transferred to the undersigned by consent of the parties per 28 U.S.C. § 636(c) by the order of

---

[1] Since the case was filed prior to the rule changes of December 1, 2000, the "old" Local Rules of the Eastern District of Texas apply in this case.

United States District Judge Howell Cobb.[2] [7] Having considered the submissions of the parties and the record, the Motion to Transfer Venue [20-1] is **DENIED**. As to SCGC's Motion to Determine State Law, the record is insufficient for the Court to make a determination at this time, therefore this motion will be held in **ABEYANCE** pending further discovery and subsequent briefing on the relationship between the parties.

**Transfer of Venue**

According to *Van Dusen v. Barrack*, 376 U.S. 612 (1964), the goal of § 1404 "is to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen* at 616. As such, any party may call upon the Court to consider whether there is a more appropriate forum for the trial of a case. The most exhaustive analysis of the law regarding a 1404(a) transfer of venue motion (at least in this district) was articulated in *Mohamed v. Mazda Motor Corporation*, 90 F. Supp. 2d 757 (E.D. Tex. 2000).[3] Here are lessons to be learned, and all are collected in one place, such as the transfer factors as enumerated by the Honorable Richard A. Schell, then Chief Judge of the Eastern District, in *Robertson v. Kiamichi Railroad*, 42 F. Supp. 2d 651, 654 (E.D. Tex. 1999). In *Mohamed*, the defendants sought transfer from the Eastern District of Texas, Marshal Division, to the Northern District of Texas, Dallas Division, a distance of perhaps 150 miles.

---

[2]That means it is no longer appropriate to list his name on filings as well.

[3]Certainly, the Fifth circuit has said the Court can deny or grant this type of motion without explanation. See *Mohamed* at fn. 9 (citing *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.), *cert denied*, 493 U.S. 935 (1989)). Yet since Defendant has attached as a supporting exhibit of what appears to be the only writ of mandamus ever issued by the Fifth Circuit on the issue of 1404(a) in the past five decades, the better course is to examine the applicable factors in detail. See Def. Ex. D, p.2. More on this later.

2

Mohamed at 776. That motion was denied. Id at 758. Here, Defendant seeks to move the case a mere 57.3 miles, between two places that are connected by a major interstate highway and thus only an hour drive apart from each other.[4] And so it begins.

The Court considers these eleven private and public interest factors against this backdrop, reiterated in *Mohamed*: Plaintiff's choice of forum should *rarely* be disturbed, unless the balance of factors *strongly* favors the defendant. *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508 (1947). Defendant's burden is not light, is it?

### 1) Availability and Convenience of Material Witnesses and the Parties

*Dupre v. Spanier Marine Corporation* selected this as the most important factor to consider in determining a motion to transfer venue.[5] The convenience of one *key* witness may outweigh the convenience of numerous less important witnesses. *Continental Airlines v. American Airlines*, 805 F. Supp 1392, 1396 (S.D. Tex. 1992). The movant must specifically identify those key witnesses and outline the substance of their testimony. *Dupre* at 825, *Continental* at 1396.

SCGC specifically names JeJuan Doucet, Elizabeth West, Jesse Bosland, Rhonda Rideaux, and either John Beasley or Randall Griggs as witnesses in this case. Def. Motion at 6. Most of these appear to be current employees of SCGC. *Id.* All are described as Louisiana

---

[4]Def. Motion.at 7. *See also* www.mapquest.com for distance and driving time.

[5]*Mohamed* considered plaintiff's choice of forum as the first factor of analysis as did *Kiamichi*. *Mohamed* at 771-772. The order of the analysis here should not be misinterpreted as the order of the relative importance of the factors.

citizens and some have residences in the Lake Charles area;[6] however, the Court notes that those persons under the control of a party are given less weight than non-party witnesses because the attendance of employees can be compelled by their employer. Thus, all employees and contractors of SCGC are on a lesser tier at the outset.

Other potential witnesses that SCGC **may** call are only vaguely referred to as: a medical expert, an economist, a rehabilitation expert. SCGC has failed to meet the standard of pleading by not identifying these persons,[7] and nor can the Court divine the actual substance of their potential testimony from the motion. More importantly, who *might* be called has no bearing here. Those persons that **must** be called are more deserving of consideration as key witnesses than SCGC's phantom witness list. Most importantly, experts might be retained from distant locations, possibly even Houston, UTMB Galveston, or Hawaii. Because a party can choose their non-treating experts, these persons are lower in priority than fact witnesses.

SCGC argues that since Plaintiff's treating physician(s) will be compensated for their time, there is no difference in convenience for him or her.[8] This ignores the fact that the physician will perforce be unable to treat patients while traveling to/from Lake Charles and during any possible dead time required by other testimony or court matters. The citizens of Texas have an interest in their treating physicians servicing the community rather than traveling

---

[6] Why only two residence addresses were provided is somewhat curious, and supports an inference that the other witnesses may reside significantly closer to this Courthouse than Defendant's premises. After all, there's lot of territory between Lake Charles and the Texas-Louisiana border, including Sulfur and Vinton, both located close to Interstate 10.

[7] Names and addresses are customary forms of identifying persons.

[8] Of course, as applied to SCGC's expert witness, the same would also be true.

to another district.[9] Plaintiff's physician also has an interest in keeping his practice open to patients. Indeed, this Court has gone to great lengths in the past to limit the impact of trial on treating physicians by arranging for testimony by video conference rather than have an active physician travel across Texas for two days merely to give a couple of hours worth of testimony.

The Court notes that none of the witnesses, party or non-party, appear to be beyond the subpoena power of the Court or beyond the control of a party. Indeed, according to Defendant, its witnesses are willing and able to testify. Thus, there is no question of availability, and this provides no support for SCGC.

As to the parties, if the transfer merely shifts the inconvenience from one party to the other, then it does not favor transfer. Such would be the case here.

As a whole, this factor provides virtually no weight supporting transfer.

## 2) Accessibility and Location of Sources of Proof

Defendant notes that the incident occurred on its premises in Louisiana, and as a result books and records related to the accident are in Louisiana. SCGC even point to a couple of district court cases, 19 and 26 years old respectively, where transfer was granted -- one involving nearly *7,000* documents. Def. Motion at 8. As *Mohammed* noted, we live in an age of faxes, photocopiers, computers, and the Internet. Terabytes[10] of information can be transported around the *planet* in a matter of minutes. In a recent case before this bench, Compaq Computer

---

[9] The same can be said for treating physicians from Louisiana; however, it is also more likely that Plaintiff's regular physician will be necessary for significantly more testimony that will a physician who saw the Plaintiff on only one occasion.

[10] That's a thousand gigabytes. Roughly the content of 100 DVDs.

Corporation produced *2,000,000* pages of documents after its motion to transfer venue was denied.[11] It is doubtful that SCGC has even one percent of that volume of information that could be described as relevant to this case.

SCGC asserts that "any proof or evidence...that might become relevant during trial will be found in Louisiana. It will be difficult to produce such evidence quickly...in Texas." Refer to the previous paragraph. Keep in mind the Local Rules regarding disclosure. Also, remember how a final pre-trial order operates. Evidence does not "become relevant during trial." If information bears significantly on this litigation, then it is subject to immediate disclosure under Local Rule-CV26.

On a similar note, SCGC offers "[i]f the Court desires to visit the location of the accident..." Def. Motion at 7. Rest easy. The Court visits the location of an accident as often as the Fifth Circuit grants mandamus on 1404(a) petitions. Photographs, videotape presentation, and accident reconstruction methods have brought the courts a long way from such medieval practices.[12]

---

[11]*See Thurmond v. Compaq Computer Corporation*, Civil Action 1:99-CV-711. Compaq requested a transfer from Beaumont to Houston, which is in the Southern District of Texas, approximately 84 miles away. The above documents were tendered initially as CD-ROMs and later in print form. Some of this data was contained in Houston, and some in distant repositories. Nevertheless, it illustrates how a large volume of data is less determinative today than it was fifty years ago.

[12]Defendant's Reply is even more incredulous. The "possible sequestration at trial" of "two upper management personnel" that "will result in lost productivity" is a stretch worthy of report in an alien abductions rag. Reply at 7. Grammar aside, 'possible sequestration' results in nothing. Actual sequestration might result in something. Yet, the reality is that sequestration is an extraordinary practice used in only the most extreme criminal situations, those in which the safety of the witness is at issue. From SCGC's brief, the uninformed reader might think that the Beaumont Division has a regular practice of holding witnesses at the Bureau of Prisons for fear

On the whole, the information age has atrophied the effect of this factor to the point where it may be inapplicable except in the most unusual circumstances. Thus, the Court finds that it does not favor transfer in this case.

### 3) Place of the Alleged Wrong

It is undisputed that the accident occurred in Lake Charles. This factor favors SCGC.

### 4) Cost of Obtaining the Attendance of Witnesses

Defendant argues that since all its witnesses reside in Louisiana, there will be increased costs in bringing them to the Federal Courthouse in Beaumont. Maybe, the Court still has no idea how many witnesses will be called, where the bulk of them reside, or how important their individual testimony is.[13] More importantly, Defendant also downplays the cost to Plaintiff and her witnesses, most of whom might be subject to compensation as experts, by stating that their testimony could be presented by deposition. However cliche it is, "what is good for the goose..." For every hypothetical expert described by SCGC, there will be no doubt a counterpart by the Plaintiff. If SCGC believes that Plaintiff's expert testimony can be present by deposition then surely its own expert testimony needs no live presentation. The Court also notes many of its fact witnesses regarding medical treatment on the scene appear to be cumulative to the testimony of the ER physician.[14] Again, to what exactly is their testimony material? Defendant has not

---

that they might miss their opportunity to testify.

[13] Does the casino have a company bus or van used for transporting guests from hotels to casinos? Some casinos do. If so, then bringing in a number of witnesses at one time may be cost effective. Surely, the movant must outline to the Court the most cost effective means of trying its case in each forum, rather than generally aver that it will cost more.

[14] Of course, it appears this way because SCGC failed to outline the substance of these persons' testimony, forcing the Court to speculate as to their testimony.

provided sufficient detail.

Thus, the Court is unable to assign any weight favoring transfer on this factor.

### 5) Possibility of Delay or Prejudice if Transfer Granted

Defendant argues that since this case is in the early stages of discovery, Plaintiff will not be delayed or prejudiced by the transfer.

However, this factor can only be neutral or favor plaintiff,[15] thus, even if true, it can not favor SCGC. As most other factors weigh in Plaintiff's favor, the Court need not add an extra brick that would merely be cumulative.

### 6) Plaintiff's Choice of Forum

Defendant argues that this factor is not relevant. To the contrary, the place where Plaintiff chooses to bring suit is entitled to consideration in a motion to transfer venue.[16] Although the presumption favoring Plaintiff's choice may be reduced if Plaintiff is not resident in the district where the suit is brought, Plaintiff is a resident of Jefferson County, which is in the Beaumont Division of the Eastern District of Texas. Also, Defendant actively solicits business from citizens residing in this district.

This is not a case where a plaintiff has attempted to drag the defendant into a distant unfavorable forum which had no connection to the plaintiff or the claims. And in conjunction with the other factors discussed *infra* and *supra*, the Court finds that this factor provides

---

[15] After all, it only comes into play if the transfer would be *granted*.

[16] *Mohamed* dissected Defendant's selected authorities on this point and concluded that they were tainted prodigy. *Mohamed* at 773.

significant weight for the Plaintiff.[17]

### 7) Location of Counsel

The location of counsel is regarded at possessing the least weight,[18] and here counsel are both burdened by trial in Beaumont, although Plaintiff's counsel slightly more. A shift to Lake Charles would decrease the burden on SCGC's counsel, but with an equivalent increase to Plaintiff's attorney. This factor thus favors the Plaintiff, however slightly.

### 8) Administrative Difficulties Caused by Court Congestion

Although not considered by either party in any detail, the Court notes a decline in filings in this division, and with the coming addition of two new district judges to replace those who have recently taken senior status, the Court discerns no congestion to favor transfer.[19] Since the Court will not speculate on the docket of the Lake Charles Division, this factor is neutral.

### 9) Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty

*Mohamed* recognized that the citizens of the Eastern District of Texas should not be burdened with claims that have nothing to do with this district. Certainly, SCGC argues that Plaintiff's claims have no nexus with this district.

But, *Mohamed* found that the residents in this district would be impacted by the existence

---

[17]There is an independent reason favoring the plaintiff on this factor. In the case *sub judice*, Defendant chose to consent to trial before the undersigned magistrate judge. That is, Defendant specifically and affirmatively consented to the jurisdiction of this Court, rather than challenge venue. A cynic might think that Defendant was forum shopping for a judge that was more likely to grant its transfer motion. Nevertheless, the Court finds in the alternative that the consent provides substantive weight for this factor.

[18]*Dupre* at 828.

[19]Note that the track assignments referred to by SCGC relate to the complexity of a single case, and thus, provide no information about the congestion of the docket as a whole.

of defective products in the community even though the damage to plaintiffs occurred in Dallas. Contrary to SCGC's assertion that Plaintiff's accident has no connection with this district, the Court recognizes the never-ending barrage of broadcast, billboard, and other advertising directed at the residents of this district by Defendant. These communications entice people to leave the comfort and safety of their homes to become business invitees on the premises of the Defendant.[20] Consequently, the local citizenry have a strong interest in determining whether their members are afforded reasonable care for their safety when accepting the hospitality of the Defendant. Thus, this factor favors denial.

### 10) Local Interest in Adjuticating Local Disputes

The citizens of Louisiana have a local interest in determining claims against Defendant. As noted above, the citizens of Texas have a local interesting in determining the claims of the Plaintiff. This factor is thus evenly balanced.[21]

### 11) Avoidance of Unnecessary Problems in Conflict of Laws

Whether Texas or Louisiana law applies to this case is hardly a problem. This case does not involve multiple jurisdictions, treaties, or international law. It is a "slip and fall" case. In the event, that Louisiana law governs the case, the Court has no difficulty in interpreting the law of Louisiana. This factor does not favor transfer.

### 12) Non-factors

A few things stand out as non-factors in considering this motion.

---

[20] Whether this Plaintiff was the direct or indirect target of the campaign, or perhaps went to the Defendant's premises without any inducement, remains a question of fact to be resolved.

[21] It would be different if Plaintiff or Defendant were located in someplace entirely different, like Arkansas.

SCGC thoughtfully attaches what is believed to be the only writ of mandamus on a 1404(a) motion granted by the Fifth Circuit.[22] *See In Re: St. Charles Gaming Co, Inc.*, Docket No 98-41239. It is a "one liner" directed at a district judge who did not make any factual findings in denying this same Defendant's motion to transfer venue in another case. How can this be reconciled with the Fifth Circuit precedent that no reasons need be given for a grant or denial of a 1404(a) motion? Quite simply. As noted in *Mohamed*, it has become the practice of many lazy defendants to offer a motion to transfer on scant or no briefing. In those situations, the Court is under no obligation to give exhaustive reasons to support its holding. Indeed, the opinion in *Mohamed* was in response to "exceptional briefing" by the defendant.

In its Reply Brief, SCGC presumes to explain arguments that the Fifth Circuit accepted and rejected by the referenced writ. "IT IS ORDERED that the petition for the writ of mandamus is GRANTED." Writ at 1. Exactly how SCGC divines the reasoning of Circuit Judges Smith and Weiner from that single sentence would make for an entertaining session with Miss Cleo at the Psychic Hotline. Wasn't there something about the necessity of a *written, published opinion* for a decision to have precedential value beyond the individual case? How many table decisions carry the day against a single five page opinion?

Add to that SCGC's other exhibits of transfers, *all of which were considered unopposed by the non-moving party*. These are wholly inapplicable, unless SCGC advocates that a motion

---

[22]Crucial (n.) decisive; critical. SCGC argues that *Mohamed* "erred on a crucial issue" because the court was unaware of this writ. Meaning that Judge Heartfield would have gone the other way and transferred the case if he had only known of this one, single instance, that even Wright and Miller have overlooked. (Possibly because it isn't even published. At least not that the Court can find. In fact, few writs appear to be published by the Fifth Circuit on any subject.) In reality, the odds of winning the lottery are better than a different result in *Mohamed*.

11

for summary judgment by Plaintiff should be granted because other defendants have been defaulted in other cases. Simply, these exhibits have no value at all in analyzing this motion because each motion to transfer must be decided on its own facts and circumstances, including the law as it has developed over time.

Finally, the most disturbing representation of all in Defendant's Reply Brief: "Plaintiff's opposition erroneously suggests that SCGC did not supply a copy of the Writ of Mandamus." This is not what Plaintiff said, nor did they suggest that. The Court noted, before even reading Plaintiff's response, that the writ at Exhibit E established nothing. The writ could have granted almost anything. As SCGC did not attach the petition for the writ to its motion, the Court wanted to see just what had been granted by the writ, and so requested a copy of that petition from counsel. Thus, Plaintiff was quite correct when it flagged the failure to provide any context for the writ. Did SCGC have an evil motive in doing this? Perhaps, and perhaps not. It certainly was not the most complete effort at briefing.

**Conclusion**

Having considered all of the relevant factors, the Court finds that Defendant has not carried the burden of proving that the convenience of the parties and the interests of justice substantially favors transfer under 1404(a).

Accordingly, Defendant's *Motion to Transfer Venue* [20-1] is **DENIED**. The Motion to Determine Applicable State Law [20-2] is premature and held in **ABEYANCE** pending further discovery.

SIGNED this 20th day of June, 2001.

*Wendell C. Radford*

WENDELL C. RADFORD
UNITED STATES MAGISTRATE JUDGE